## CHAS. EMBRY v. ANDREW MORRISON.

CONTRACT OF SLAVE. *Cannot be ratified after emancipation.* A slave having contracted to purchase real estate, and having made various payments therefor, both before and after emancipation; upon a bill filed for a recision, with an account of the money paid by him, etc.;

*Held,* That he was entitled to relief. The original contract being void under the law and public policy, the mere failure of the complainant to take steps to repudiate it after his emancipation did not so ratify the contract as to make it valid.

Cases cited: Jenkins v. Brown, 6 Hum., 299; Fletcher v. The State, 6 Hum., 256; Bedford, Trustee, v. Williams, Adm'r, 5 Cold., 207; McCullough v. Moore, 9 Yerg., 307.

Authority cited: 1 Story's Eq. Jur., §348, note 2.

### FROM DAVIDSON.

Appeal from the Chancery Court. HORACE H. HARRISON, Chancellor.

E. H. EAST for Embry.

ED. BAXTER for Morrison.

McFarland, J., delivered the opinion of the Court.

The complainant charges that on November 23, 1864, the defendant Morrison sold and conveyed to him a small house and lot in Nashville, at the price of $2,800, $1,000 of which he paid in hand, and notes given for the remainder, upon which he has made subsequent payments.   He charges that at the time he was a slave, and wholly ignorant of business transactions of this character, and of the value of such property; and that the defendant took advantage of his condition, and with the assistance of one Brown, a colored man employed for the purpose, induced the complainant to purchase the property at an exhorbitant price.   He tenders the property back, prays for a recision, with an account of the money paid by him, and improvements, after deducting reasonable rents.

It is not denied that the complainant was at the time a slave, and remained so until liberated by constitutional amendment the 22d of February, 1865.  He was, however, in fact, not under the control of his master, but, like many others of his class at the time, free from any actual restraint, and permitted to act for himself.

As we understand the decisions of the Court during the existence of slavery, they established that slaves were not citizens, or persons capable of holding or owning property, or of making contracts, except in very small maters, and, therefore, contracts made with them were not binding either upon them or the par-

ties with whom they contracted, but were simply void.
See 9 Yerg., 307; *Jenkins* v. *Brown*, 6 Hum., 299;
*Fletcher* v. *The State*, 6 Hum., 256; 5 Cold., 207.

And we suppose that the result is not altered by
the fact that at the time the complainant was in reality
free from any restraint.   His legal status was that of
a slave.   He could neither buy the property or own
it, and the contract was void.

The question then arises as to the effects of his
acts after his emanicipation.   He went into possession
at the date of the purchase, and so remained until
the filing of this bill, in July, 1867, and during the
time, and after his emancipation, made several pay-
ments upon his notes, the last as late as March, 1867.
This might have been sufficient to ratify or confirm
a voidable contract, such as a contract made by an in-
fant, or a contract procured by fraud; but assuming
that the original contract was void absolutely, under
the law and public policy under which the rule was
established, then we think the mere failure of com-
plainant to take steps to repudiate it after his emanci-
pation, did not so ratify the contract as to make it
valid.   See, on the subject of the ratification of void
contracts, 1 Story's Eq. Jur., §348, note 2.

In this view we have not noticed particularly the
question of actual fraud or undue advantage, but we
think it probable the bargain was rather a hard one,
and that the parties were not on an equal footing.
The decree of the Chancellor in favor of the com-
plainant was, therefore, correct.

But it is argued that the complainant can have no decree for the $1,000, paid at the making of the contract, as he was then a slave, and incapable of owning property. According to the above theory, this money belonged to his master, and cannot be recovered by the complainant.

This argument is very plausible. The former owner of the complainant was examined as a witness, and he says he regards the money paid by the complainant to Morrison as belonging to the complainant, and that he has no claim upon it. While the complainant was a slave, the money, had he retained it, would have been, in law, the money of his master. Upon his emancipation, if the master had seen proper to recognize the rights of the slave to the money, it would, no doubt, have become his.

Such, we think, was the fact in this case. It was not a transfer by the former master to the complainant pending the litigation, but a recognition of the complainant's right, which is sufficient, as between them, to give the complainant the money, and of this the defendant cannot object, as in any event he is not entitled to it. The result is not changed by the fact that the money had, in the meantime, come to the hands of defendant.

The decree of the Chancellor will be affirmed, and the cause remanded to have the account taken as ordered. The defendant will pay the costs of this Court.